IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TERRI G. OCAMPO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. 19-CV-02875-CCB |
| | * | |
| | * | |
| MEGAN J, BRENNAN, *Postmaster General* | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | ****** | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant, Megan J. Brennan, Postmaster General of the United States, by Robert K. Hur, United States Attorney for the District of Maryland, and Rebecca A. Koch, Assistant United States Attorney for said District, hereby submits this memorandum of law in support of her motion to dismiss.

## INTRODUCTION

This is a federal-sector employment action in which Plaintiff, Terri Ocampo ("Plaintiff"), a former City Carrier Assistant with the United States Postal Service (the "Agency" or "Postal Service"), alleges that she was subjected to disability discrimination, denied a reasonable accommodation for her disability, and constructive discharge, by the Postal Service. Plaintiff alleges that she has diabetes and requested a non-outdoor walking route in August 2018 due to the hot weather, but her supervisor denied her request on four out of five occasions. Plaintiff alleges that she resigned her position in light of her supervisor's failure to provide the requested routes.

Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. First, Plaintiff fails to adequately allege a disability, that she was qualified to perform her

essential functions of her position, and the Postal Service refused to grant her reasonable accommodations, and thus the Complaint fails to allege a plausible claim for failure to accommodate.  Second, Plaintiff fails to sufficiently allege an adverse employment action and discriminatory animus, and therefore the Complaint does not allege a plausible claim for disability discrimination.  Third, Plaintiff's claims under Title 20 of Maryland's State Government Article are preempted by the Rehabilitation Act.  Finally, the Complaint fails to allege a plausible claim for constructive discharge.

## BACKGROUND

According to the Complaint, Plaintiff worked for the United States Postal Service in Middle River, Maryland as a City Carrier Assistant ("CCA") from approximately August 2017 through September 5, 2018.  Compl. ¶¶ 4, 9, 18.  Phillip Baldwin, Troy Griffin, and Tashira Jefferies directly or indirectly supervised Plaintiff.  *Id*. at 9.

Plaintiff alleges that delivering mail on an outdoor walking route were part of her job responsibilities.  *See* Compl. ¶¶ 12, 15-16, 18.  The Standard Job Description for a City Carrier Assistant defines the functional purpose of a CCA as "delivers and collects mail on foot or by vehicle under varying road and weather conditions in a prescribed area."  Report of Investigation ("ROI") at 153-54, Ex. 1.  The duties and responsibilities of a CCA include "[d]eliver[ing] mail along a prescribed route, on foot or by vehicle, on a regular schedule, [and] picking up additional mail from relay boxes as needed."  *Id*.

During the hot weather in late August 2018, Plaintiff alleges that she felt ill delivering mail on her assigned mail route in light of the hot weather and her diabetes.  Compl. ¶ 10.  On August 27, 2018, Plaintiff alleges that she asked her supervisor to return to the office from her walking route for a break with air conditioning, but her supervisor told her to "find a shade tree and keep it

moving." *Id.* ¶ 11.  On August 28, 2018, Plaintiff requested to do collection, deliver packaged or do part of other routes where Plaintiff would not be out walking in the heat all day, but her supervisor denied her request, and said, "You are telling me you are not fit for duty, you are a CCA and you have to have street time." *Id.* ¶ 12.

On August 29, 2018, Plaintiff alleges that she did not report to work, and instead, visited her doctor. *Id.*  ¶ 13.  Her doctor provide a medical note recommending "more frequent breaks [for Plaintiff] during days with high heat and be offered work in [sic] air-conditioned environment, as extreme weather can have negative health impact." *Id.*

On August 30, 2018, Plaintiff alleges that she presented her medical note and was assigned to work collections and deliver mail in two high-rise buildings with air conditioning. *Id.* ¶ 14. However, on August 31, she was again assigned a walking route, and her supervisor informed her that "you are not fit for duty, if you can't do a walking route." *Id.*  She further alleges that Ms. Jeffries "berated" her for taking a long time to complete her assignment on August 31. *Id.* ¶ 16.

After four work days of not receiving the type of route she requested, Plaintiff stopped reporting to work. *Id.* ¶ 17.  From September 1, 2018 through September 4, 2018, Plaintiff did not report for work. *Id.*  On September 5, 2018, Plaintiff reported to work, her supervisor assigned her to a route that did not meet Plaintiff's satisfaction, and then Plaintiff resigned her position during a meeting with her leadership. *Id.* ¶¶ 18, 35.  During this meeting, Plaintiff alleges that Mr. Griffin made a comment about the Postal Service not hiring "sick people," and Ms. Jeffries allegedly claimed that Plaintiff effectively resigned on August 31, 2018, and should not have reported to work on September 5, 2018. *Id.* ¶ 19.

## ADMINISTRATIVE BACKGROUND

On September 7, 2018, Plaintiff contacted the Agency's EEO Office.  ROI at 8-10.  An investigation of Plaintiff's administrative claims was undertaken and completed on or about May

8, 2019, and a copy of the Report of Investigation ("ROI") was sent to Plaintiff.  ROI at 1.  Plaintiff did not request a hearing before the United States Equal Employment Opportunity Commission.

On July 2, 2019, the Agency issued a Final Agency Decision finding no discrimination, and more specifically, that Plaintiff failed to establish a prima facie case of disability discrimination or pretext, failure to accommodate, or a hostile work environment.  Plaintiff filed the instant Complaint on September 30, 2019.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 12(b)(6) provides for the dismissal of a complaint if it fails "to state a claim upon which relief can be granted."  A motion pursuant to this rule tests the legal sufficiency of the complaint.  *See e.g., Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's "'[f]actual allegations must be enough to raise a right to relief above the speculative level,' thereby 'nudg[ing] their claims across the line from conceivable to plausible.'"  *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  Although courts must generally accept as true the allegations of a complaint, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Additionally, "[a] court passing on a motion to dismiss may consider attachments to a complaint or the motion to dismiss if "'integral to the complaint and authentic.'"  *Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 851 (4th Cir. 2016) (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

"At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will 'be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Francis v.*

*Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## ARGUMENT

**I.  PLAINTIFF FAILS TO ALLEGE A PLAUSIBLE CLAIM FOR FAILURE TO ACCOMMODATE.**

The Rehabilitation Act is violated if an employer fails to provide an employee with a

reasonable accommodation for his disability.  Under the Rehabilitation Act, to establish a claim

for a failure to accommodate, Plaintiff must show that (1) she has a disability; (2) defendant knew

of her disability; (3) with reasonable accommodations she is otherwise qualified to perform the

essential functions of the position; and (4) defendant refused to make such reasonable

accommodations. *Lewis v. Gibson*, 621 Fed. Appx. 163, 164 (4th Cir. 2015), *cert. denied sub nom.*

*Lewis v. McDonald*, 136 S. Ct. 840 (2016).  The Complaint fails to satisfactorily allege the first,

third, and fourth prongs.

### A.  The Complaint Does Not Adequately Allege Disability.

The Rehabilitation Act adopts the ADA's definition of "disability," *see* 29 U.S.C §

705(9)(B), including the amendments to the definition in the ADA amendments Act of 2008

("ADAAA"). *Brady v. Bd. of Educ. of Prince George's Cty.,* 222 F. Supp. 3d 459, 468 (D. Md.

2016), *aff'd*, 707 F. App'x 780 (4th Cir. 2018).  The ADA defines a disability as: "(1) 'a physical

or mental impairment that substantially limits one or more major life activities' (the 'actual-

disability' prong); (2) 'a record of such an impairment' (the 'record-of' prong); or (3) 'being

regarded as having such an impairment' (the 'regarded-as' prong)." *Summers v. Altarum Inst.,*

*Corp.*, 740 F.3d 325, 328 (4th Cir. 2014) (citing 42 U.S.C. § 12102(1)).  Major life activities

include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, ... working," and "operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions."  42 U.S.C. § 12102(2).  "'In assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments that merely affect major life activities from those that substantially limit those activities.'"  *Levy v. New York State Dep't of Envtl. Conservation*, 297 F. Supp. 3d 297, 318-19 (N.D.N.Y. 2018) (citing *Troeger v. Ellenville Central Sch. Dist.*, 523 Fed. Appx. 848, 852 (2d Cir. 2013)).

With respect to diabetes, "'the ADA now requires courts to evaluate diabetes 'in terms of its limitations on major life activities when the diabetic does not take insulin injections or medicine and does not require behavioral adaptations such as a strict diet.'"  *Jones v. McDonald*, No. 17-20153, 2018 WL 3629592, at*10 (S.D. Fla. 2018) (quoting *Hensel v. City of Utica*, 6:15-cv-0374, 2017 WL 2589355, at *4 (N.D.N.Y. June 14, 2017) (citing *Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 862 (9th Cir. 2009)).  "Courts applying the current version of the ADA have agreed, finding that a plaintiff can show she is disabled merely by alleging that she suffers from diabetes and takes medication for it."  *Id*. (citation and internal quotation marks omitted).

Here, Plaintiff alleges that she has an actual disability (diabetes) and that Defendant regarded her as disabled,[1] but the Complaint is devoid of further factual enhancement.  *See* Compl.

---

[1]  Because Plaintiff fails to adequately allege any discriminatory conduct because of her diabetes, Plaintiff does not set forth a disability within the meaning of 42 U.S.C. § 12102(1)(C).

¶ 20.  Plaintiff does not allege the type of diabetes with which she was diagnosed, when she was diagnosed, whether she takes medicine to treat her diabetes, whether her diabetes requires behavioral adaptation such as a strict diet, or her overall health as a result of her diabetes.  Plaintiff asserts that her diabetes affects her ability to perform manual tasks, but the Complaint omits any further detail.  *See id*.  There are no allegations identifying those manual tasks, or the extent or frequency to which her diabetes impairs her ability to perform those tasks.

Plaintiff alleges that she felt ill or sick in very hot weather, but she felt better after short breaks (e.g., twenty minutes) inside an air conditioned office building.  *See id*. ¶¶ 10, 11.  Plaintiff further alleges that she provided Defendant a doctor's note indicating that "extreme weather can have negative health impact," *id*. ¶ 13, but no further details of that "negative health impact" are alleged.

Such pleading deficiencies are fatal to Plaintiff's ability to allege a qualifying disability.  For example, in *Quarles v. Md. Dep't of Human Res*., No. MJG-13-3553, 2014 WL 6941336, at *4 (D. Md. Dec. 5, 2014), this Court found that the plaintiff's allegation that her diabetes "limited her ability to move freely, walk steps, or travel from building to building" was insufficient to plausibly show substantial impairment on major life activity.[2]  *Id*.  This Court explained that "[w]alking is a major life activity.  However, an allegation of *some* walking limitation is not an allegation of specific facts that create a plausible claim of a *substantial* walking limitation."  *Id*. (emphasis in original).  Likewise, here, Plaintiff's bare-bones pleading concerning her diabetes does not demonstrate a substantial impairment on a major life activity.

---

[2] Although this Court appears to have applied the version of the ADA prior to the ADA Amendments Act of 2008 in *Quarles,* the Court's analysis remains helpful to show what is required to plead substantial impairment given Plaintiff's failure to allege that she must take medicine for her diabetes.  *See Jones* 2018 WL 3629592, at *10.

**B. Plaintiff Does Not Adequately Allege That She Was Qualified To Perform The Essential Functions Of Her Letter Carrier Position.**

To evaluate whether a plaintiff is qualified to perform the essential functions of his or her position within the meaning of the Rehabilitation Act, this court must consider "whether the specific accommodation requested was reasonable and whether, if the requested accommodation was provided, the plaintiff could perform the essential functions of the position. *Lewis*, 621 F. App'x at 164 (citing *Jacobs v. N.C. Admin. Office of the Cts.,* 780 F.3d 562, 580 (4th Cir. 2015)).

"Reasonable accommodations" are "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii); *see also Nanette v. Snow*, 343 F. Supp. 2d 465, 473 (D. Md. 2004) (A person must be able to "perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue" with reasonable accommodation) (citing *Tyndall v. Nat'l Educ. Ctrs., Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994)).

"The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). To determine whether a particular job function is essential, the court may look to the employer's judgment, written job descriptions, and the work experience of past employees in the position or similar positions. *See* 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n)(2). The plaintiff "bears the burden of establishing his ability to perform the essential functions of his job with a reasonable accommodation." *Fleetwood v. Harford Sys., Inc.,* 380 F. Supp. 2d 688, 697 (D. Md. 2005) (citing *Tyndall,* 31 F.3d at 213).

**1.  Plaintiff Was Unable To Perform The Essential Functions Of Her Position.**

By Plaintiff's own allegations, she was unable to perform the essential functions of her position with or without accommodation.  Plaintiff alleges that delivering mail on an outdoor walking route were part of her job responsibilities.  *See* Compl. ¶¶ 12, 15-16, 18.  Further, the Standard Job Description for the CCA position provides, in pertinent part, that the functional purpose of the position is to deliver and collect mail "on foot or by vehicle under varying road and weather conditions in a prescribed area."  ROI 153-54, Ex. 1.  When evaluating the essential functions of a mail carrier with the postal service, other courts have concluded that mail delivery is an essential function of the mail carrier position.  *See, e.g.*, *Shiring v. Runyon*, 90 F. 3d 827, 831 (3d Cir. 1996) ("One of the essential functions of a mail carrier is to physically deliver the mail to the people along the route."); *Luckiewicz v. Potter*, 670 F. Supp. 2d 400, 409-20 (E.D. Pa. 2009) (letter carrier who was unable to deliver mail along a regular route was unable to perform essential functions of his position); *Rio v. Runyon*, 972 F. Supp. 1446, 1457 (S.D. Fla. 1997) ("mail delivery is an essential function of the letter carrier position"); *Sidaris v. Runyon*, 967 F. Supp. 1260, 1267 (M.D. Ala 1997) ("[D]elivery of the mail during hot temperatures is an essential element of the [letter carrier] position").

However, Plaintiff alleges that she was unable to deliver mail on an outdoor walking route in hot weather without feeling ill.  *See* Compl. ¶¶ 10-12.  Taking breaks under shaded trees did not help.  *Id*. ¶ 11.  The medical note from Plaintiff's doctor requesting that Plaintiff "be offered work in [sic] air-conditioned environment, as extreme weather can have negative health impact," further demonstrates Plaintiff's inability to deliver mail on an outdoor walking route during the hot August weather.  *See id*. ¶ 13.

Plaintiff's requested accommodations did not enable her to deliver mail on an outdoor walking route in the hot weather, but instead, sought to eliminate this aspect of her job requirements. *See id.* ¶¶ 12, 14, 15. Thus, by Plaintiff's own allegations, she could not perform the essential functions of her CCA position during the hot summer weather with or without the requested accommodations, and therefore Plaintiff is not a "qualified individual" for purposes of the Rehabilitation Act. *See Nanette*, 343 F. Supp. 2d at 473; *see also Rio*, 972 F. Supp. at 1457 (mail carrier who could not perform essential function of mail delivery was not qualified individual for purposes of Rehabilitation Act); *Sidaris*, 967 F. Supp. at 1267 (letter carrier who could not deliver mail in hot summer months was not qualified within meaning of Rehabilitation Act).

### 2. Plaintiff's Requested Accommodations Were Not Reasonable.

Plaintiff alleges that she requested to "do collection, deliver packaged or do part of other routes where Plaintiff would not be out walking in the heat all day," *see* Compl. ¶ 12, for work in an air-conditioned environment, *id.* ¶ 14, or to deliver mail in high-rise buildings with air conditioning, *id.* ¶ 15, in light of her diabetes and the hot summer weather. Such requests are not reasonable for a letter carrier.[3]

"An employer is not obligated to provide a qualified individual with the accommodation of the employee's choice upon demand; the employer must only provide a reasonable accommodation." *Dahlman v. Tenenbaum*, DKC-10-2993, 2011 WL 3511062, at *13 (D. Md. 2011)). Indeed, "the denial of a request by a disabled employee can only subject the employer to liability if there is 'a causal relationship between the disability and the request for accommodation,' or, in other words, if 'the requested accommodation was necessary in order for [her] to perform

---

[3] Because Plaintiff's alleged requested accommodations were not reasonable, Plaintiff fails the third and fourth prongs of her prima facie case for failure to accommodate.

the essential functions of [her] job.'" *Fierce v. Burwell,* 101 F. Supp. 3d 543, 550 (D. Md. 2015)

(quoting *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997)).

Here, Plaintiff's request to "do collection, deliver packaged or do part of other routes where

Plaintiff would not be out walking in the heat all day," *see* Compl. ¶ 12, for work in an air-

conditioned environment," *id*. ¶ 14, or to deliver mail in high-rise buildings with air conditioning,

*id*. ¶ 15, was not a reasonable accommodation request because it eliminated the essential function

of delivering mail by foot in varying weather conditions.   It is well-established that the

Rehabilitation Act does not require an employer to eliminate an essential function of a job as a

reasonable accommodation.   *See Lewis*, 621 Fed. Appx. at 164 (accommodation request that

"would necessitate changing the essential functions of [plaintiff's] employment" was not

reasonable); *Jasany v. United States Postal Service,* 755 F.2d 1244, 1250 (6th Cir. 1985) ("post

office was not required to *accommodate* [plaintiff] by *eliminating one* of the essential functions of

[the] job") (emphasis in original); *see also Rio*, 972 F. Supp. at 1457 (Postal Service not required

to eliminate letter carrying as a reasonable accommodation for a letter carrier).   Indeed, an

employer is not required to grant even a reasonable accommodation unless it would enable the

employee to perform *all* of the essential functions of her position." *Jacobs*, 780 F.3d at 581

(emphasis in original).

Further, the Complaint lacks adequate factual allegations showing that Plaintiff's requested

accommodation was necessary for her to deliver mail on a walking route. *See Fierce*, 101. F.

Supp. 3d at 550.   In fact, Plaintiff's allegations in the Complaint belie any assertion that her

disability necessitated an indoor or non-walking route during the hot weather.   As an initial matter,

Plaintiff apparently had no issue performing her duties in the summer of 2017. *See* Compl. ¶ 9

(alleging that Plaintiff was hired as a City Carrier Assistant in August 2017).   In August 2018,

Plaintiff alleges that she was able to resume her outdoor walking route on August 27, 2018 "without feeling ill" "after taking a break in the office with air condition[ing] about twenty (20) minutes." Compl. ¶ 11. Certainly, Plaintiff's request to "do collection, deliver packaged or do part of other routes where Plaintiff would not be out walking in the heat all day," *see id.* ¶ 12, "work in an air conditioned environment, *id.* ¶ 14, or to deliver mail in high-rise buildings with air conditioning, *id.* ¶ 15, was not necessary if she was able to perform her outdoor walking route by returning to the office for a short break in the air conditioned environment. *See, e.g., Fierce*, 101 F. Supp. 3d at 550 (holding that the employee was not denied a reasonable accommodation where her employer refused to grant her request to telework full time where the plaintiff offered no evidence that her disability required her to work from home).

Because Plaintiff has failed to show a qualifying disability, that she could perform the essential functions of a letter carrier with the requested accommodations, that her requested accommodations were reasonable, or that her requested accommodations were necessary for her to perform the essential functions of her job, this Court should dismiss Plaintiff's reasonable accommodation claim.

## II.    PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM FOR DISABILITY DISCRIMINATION.

To prevail on a disability discrimination claim, Plaintiff must establish that the Agency intentionally discriminated against her based upon her disability. *See, e.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000). A plaintiff generally may establish such claims by one of two avenues of proof. First, she may demonstrate through direct or circumstantial evidence that some protected characteristic was a motivating factor in the employer's adverse employment action. *See, e.g., Hill v. Lockheed Martin Logistics, Mgt., Inc.,* 354 F.3d 277, 284 (4th Cir. 2004) (en banc), *abrogated in part on other grounds by Univ. of Tex. Sw. Med.*

*Ctr. v. Nassar,* 570 U.S. 338 (2013).   Alternatively, she may "proceed under a 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination or retaliation, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Id.* at 285.

In the instant case, the Complaint contains no allegations of "direct evidence" of discrimination. *See Warch v. Ohio Cas. Ins. Co.,* 435 F.3d 510, 520 (4th Cir. 2006), *cert. denied*, 549 U.S. 812 (2006) ("Direct evidence must be evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.") (citation and internal quotation marks omitted).   Thus, if Plaintiff intends to rely upon the indirect pretext framework, she must first establish a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

To be clear, Plaintiff is not obliged to plead facts sufficient to establish a prima facie case of discrimination to survive a motion to dismiss. *See, e.g., Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd* 566 U.S. 30.   She must, however, satisfy the stringent pleading standard established in *Iqbal* and *Twombly*, which in the discrimination context means she is "required to allege facts to satisfy the elements of a cause of action created by [the relevant] statute." *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015), *cert. denied*, 136 S. Ct. 1162 (2016).   In other words, the complaint must include adequate factual allegations to support a plausible claim that the Postal Service discriminated against her because of her disability. *See id.* at 583 (quoting *Iqbal*, 556 U.S. at 678).

The Rehabilitation Act prohibits a federal agency from discriminating against an "otherwise qualified individual with a disability … solely by reason of her or his disability."   29 U.S.C. § 794(a).   In order to establish a *prima facie* case of disparate treatment on the basis of disability, Plaintiff must demonstrate that: (1) she had a disability; (2) she was a qualified

13

individual; and (3) she suffered an adverse action on account of her disability.  *Fierce*, 101 F.

Supp. 3d at 552 (citing *Martinson v. Kinney Shoe Corp.,* 104 F.3d 683, 686 (4th Cir. 1997)).

Plaintiff fails to sufficiently allege each prong of her disability discrimination claim.[4]

### A.  The Complaint Does Not Adequately Allege An Adverse Action on the Basis of Constructive Discharge.

A constructive discharge can satisfy the requirement for an adverse employment action in

establishing a prima facie case of disability discrimination.  *See Whitten v. Fred's, Inc.,* 601 F. 3d

231, 248 (4th Cir. 2010), *overruled on other grounds by Vance v. Ball State Univ.*, 570 U.S. 421,

(2013).   "A claim of constructive discharge arises when an employee resigns because the

'circumstances of discrimination' made the employee's working conditions 'so intolerable that a

reasonable person in the employee's position would have felt compelled to resign.'"  *U.S. Equal*

*Employment Opportunity Comm'n v. Ecology Servs., Inc.*, No. CV ELH-18-1065, 2020 WL

1308358, at *13 (D. Md. Mar. 19, 2020) (quoting *Green v. Brennan*, -- U.S. --, 136 S.Ct. 1769,

1776 (2016)).

To establish a constructive discharge claim, a plaintiff must show "that [s]he was

discriminated against by h[er] employer to the point where a reasonable person in h[er] position

would have felt compelled to resign" and that she actually resigned.  *Green*, 136 S.Ct. at 1777

(citing *Pennsylvania State Police v. Suders*, 542 U.S. 129, 148 (2004)).  According to the Fourth

Circuit:

> Intolerability' is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign ...."  The intolerability of working conditions "'is assessed by the objective

---

[4] For the reasons set forth in Sections I.(A.) and I.(B.), Plaintiff fails to adequately allege disability and that she was a qualified individual for purposes of the Rehabilitation Act, and therefore Plaintiff cannot demonstrate the first two prongs of her prima facie claim of disability discrimination.

standard of whether a 'reasonable person' in the employee's position would have felt *compelled* to resign,' ... that is, whether he would have had *no choice* but to resign."

*Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) (internal citations and quotation marks omitted).

"In assessing intolerability, the frequency of the conditions at issue is important." *Id.* "The more continuous the conduct, the more likely it will establish the required intolerability. On the other hand, when the conduct is isolated or infrequent, it is less likely to establish the requisite intolerability." *Id.*

"Intolerability is a high bar." *U.S. Equal Employment Opportunity Comm'n,* 2020 WL 1308358, at *13. According to the Fourth Circuit, "difficult or unpleasant working conditions, without more, are not so intolerable as to compel a reasonable person to resign." *Evans,* 936 F.3d at 193; *see also James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 378 (4th Cir. 2004) (quoting *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994)) ("[M]ere 'dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.'"). A claim for constructive discharge requires that "the plaintiff … show 'something more' than the showing required for a hostile work environment claim." *Evans*, 936 F.3d 183, 193 (quoting *Suders*, 542 U.S. at 147); *see also Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 162 (4th Cir. 2018) ("The 'intolerability' standard governing constructive discharge claims is more stringent than the 'severe and pervasive' standard for hostile work environment claims.").

Here, Plaintiff fails to meet the high bar to plead a claim for constructive discharge. On four separate dates in August 2018, Plaintiff alleges that her supervisor did not provide her with a

mail route that sufficiently minimized her exposure to high outdoor temperatures.  Such conduct lacks the severity and frequency to rise to the level of intolerability.

On August 27, 2018, Plaintiff alleges that she asked her supervisor to return to the office from her walking route for a break with air conditioning, but her supervisor told her to "find a shade tree and keep it moving."  Compl. ¶ 11.  On August 28, 2018, Plaintiff requested to do collection, deliver packaged or do part of other routes where Plaintiff would not be out walking in the heat all day, but her supervisor denied her request, and said "You are telling me you are not fit for duty, you are a CCA and you have to have street time." *Id*. 12.  On August 30, Plaintiff alleges that she was assigned to work collections and deliver mail in two high-rise buildings with air conditioning.  *Id*. ¶ 15.  However, on August 31, she was again assigned a walking route, and her supervisor informed her that "you are not fit for duty, if you can't do a walking route." *Id*.  She further alleges that Ms. Jeffries "berated" her for taking a long time to complete her assignment on August 31.  *Id*. ¶ 16.

After four work days of not receiving the type of route she requested, Plaintiff stopped reporting to work.  *Id.* ¶ 17.  From September 1, 2018 through September 4, 2018, Plaintiff did not report for work.  *Id*.  On September 5, 2018, Plaintiff reported to work, Plaintiff's supervisor assigned her to a route that did not meet Plaintiff's satisfaction, and then Plaintiff resigned her position during a meeting with her leadership.  *Id*. ¶ 18.  During this meeting, Plaintiff alleges that Mr. Griffin made a comment about the Postal Service not hiring "sick people," and Ms. Jeffries allegedly claimed that Plaintiff effectively resigned on August 31, 2018 and should not have reported to work on September 5, 2018. *Id*. ¶ 19.   Such conduct, even if true, falls short of establishing an intolerable workplace such that a reasonable person in Plaintiff's shoes would have felt compelled to resign. *See Green*, 136 S.Ct. at 1777, *Evans*, 936 F.3d at 193.  Here, Plaintiff

complains of fairly benign and infrequent actions and comments by a few of her supervisors relating to a brief period in August 2018 when Plaintiff did not want to deliver mail on a walking route in the hot weather.   However, the Fourth Circuit has instructed that dissatisfaction with working conditions or feelings of being criticized are not so intolerable to compel a person to resign.  *See Evans,* 936 F.3d at 193; *James*, 368 F.3d at 378.

The conduct about which Plaintiff complains is not more egregious than the severe or pervasive standard for a hostile work environment as required for constructive discharge.  Indeed, the Complaint fails to allege conduct of a level to even meet a hostile work environment standard. *See, e.g*., *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 67 (1986) (citation and internal quotation marks omitted) (A hostile work environment exists when the workplace is permeated with "discriminatory intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."); *Tawwaab v. Va. Linen Serv., Inc.,* 729 F. Supp. 2d 757, 777 (D. Md. 2010) ("courts usually only allow hostile work  environment claims to proceed where the discriminatory abuse is near constant, oftentimes of a violent or threatening nature, or has impacted the employee's work performance.").  As such, Plaintiff has failed to adequately allege a constructive discharge.

## B.  The Complaint Does Not Adequately Allege Discriminatory Animus.

The Complaint lacks factual allegations that raise a reasonable inference of disability-based discrimination.

Discriminatory animus based on a protected trait can be shown by the employer's differential treatment of similarly situated employees outside of her protected class.  *See Coleman*, 626 F.3d at 190.  To adequately allege a comparator, a plaintiff "must demonstrate that the comparator was 'similarly situated' in all relevant respects."  *Johnson v. Baltimore City Police*

*Dep't*, No. ELH-12-2519, 2014 WL 1281602, at *19 (D. Md. Mar. 27, 2014) (quoting *Sawyers v.*

*United Parcel Serv.*, 946 F. Supp. 2d 432, 442 n.10 (D. Md. 2013), *aff'd*, 576 F. App'x 199 (4th

Cir. 2014)).  "Such a showing would include evidence that the employees 'dealt with the same

supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such

differentiating or mitigating circumstances that would distinguish their conduct or the employer's

treatment of them for it.'"  *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (quoting

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).  Comparators need not be precisely

equivalent in position to a plaintiff, but there must be sufficient similarity between them to allow

appropriate comparison.  *See Roberts v. Coffey*, No. DKC 10-3359, 2012 WL 2000353, at *4 n.11 (D.

Md. June 4, 2012); *see also Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) ("[T]he

purpose of the similarly situated requirement is to eliminate confounding variables, such as differing

roles, performance histories, or decision-making personnel . . . ."), *aff'd*, 553 U.S. 442 (2008).

Here, Plaintiff fails to allege that she was treated any worse than other similarly situated

employees outside her protected class for any reasons, much less because of her disability.  Instead,

Plaintiff generally alleges a CCA in Parkville (a different postal office) was allowed to work in the

office and drive carriers around due to an open boot on her foot.  Compl. ¶ 15.  This CCA with a

foot injury, however, is not outside Plaintiff's protected class.  Moreover, a CCA in a different

post office and with presumably different supervisors is not similarly situated to Plaintiff.  *See*

*Johnson*, 2014 WL 1281602, at *19; *Haywood*, 387 F. App'x at 359.  Plaintiff offers no facts about

the nature of the Parkville CCA's injury, the length of time in which the CCA was afforded an

alternative work assignment or the circumstances surrounding that assignment, or the staffing

issues at the Parkville Post Office at the time.  At bottom, Plaintiff failed to identify any similarly

situated individuals who were not members of her protected group who were treated differently.

Nor has she presented any other evidence that affords a sufficient basis from which to draw an inference of discrimination.  Instead, Plaintiff alleges that her supervisor denied her requests because street time was required for all CCAs.  *See* Compl. ¶ 12.  Plaintiff cannot rely solely on her own speculation that her supervisor denied her the mail route she wanted due to her disability. *Causey v. Balog,* 162 F.3d 795, 801-02 (4th Cir. 1998) (concluding that plaintiff's "conclusory statements that [the employer] treated him less favorably than younger black and white employees of similar rank ..., without specific evidentiary support, cannot support an actionable claim for [race- or age-based] harassment").  Indeed, Plaintiff's mere speculation that animus motivated her management's denial of her mail route requests is not sufficient to create a triable issue.  *C & H Co. v. Richardson,* 78 Fed. Appx. 894, 905 (4th Cir. 2003) (affirming grant of summary judgment and noting that "it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture") (citation and internal quotation marks omitted).

Plaintiff must allege some facts tending to show that the mistreatment she claims to have suffered was causally related to her disability.  Without more, Plaintiff's claims do not plausibly aver that she was discriminated against because of her disability by virtue of disparate treatment. *See McCleary-Evans,* 780 F.3d at 585, 588 (affirming dismissal where plaintiff failed to allege adequate factual allegations to support her claim that defendant discriminated against because of her race or gender).

Because the Complaint fails to plausibly allege a disability, that Plaintiff was a qualified individual, an adverse employment action, or discriminatory animus, Plaintiff's claim of disability discrimination must be dismissed.

**III.**     **AS A FORMER FEDERAL EMPLOYEE, PLAINTIFF CANNOT STATE A VIABLE CLAIM UNDER MARYLAND'S ANTI-DISCRIMINATION LAWS.**

Counts Three and Four of the Complaint, based on purported violations of Title 20 of Maryland's State Government Article, should be dismissed because "the Rehabilitation Act is the exclusive means by which a plaintiff may raise claims against federal agencies relating to disability discrimination."  *Berkner v. Blank*, No. DKC-12-1390, 2013 WL 951562, at *8 (D. Md. Mar. 11, 2013) (citing *Brown v. Henderson*, 6 Fed. Appx. 155, 156 (4th Cir. 2001)), *aff'd sub nom.*, *Berkner v. Pritzker*, 561 Fed. Appx. 279 (4th Cir. 2014); *see also Perry v. United States*, TDC-14-2862, 2015 WL 3558081, at *3 (D. Md. June 2, 2015), *aff'd* by 669 Fed. Appx. 113 (4th Cir. 2016) (citing *Brown*, 6 Fed. Appx. at 156) ("the Rehabilitation Act is the sole judicial remedy for federal employees alleging disability discrimination"); *accord Welsh v. Hagler*, 83 F. Supp. 3d 212, 222 (D.D.C. 2015) (collecting cases).

**IV.**     **THE COMPLAINT FAILS TO ALLEGE A PLAUSIBLE CLAIM FOR CONSTRUCTIVE DISCHARGE UNDER THE REHABILITATION ACT.**

For the reasons discussed in Section II.(A.), Plaintiff fails to plausibly allege a claim for constructive discharge.  As such, this Court should dismiss Count Five under Rule 12(b)(6) for failure to state a claim.

## CONCLUSION

Based on the foregoing, Defendant respectfully requests that this Court grant Defendant's motion and dismiss Plaintiff's claims for failure to state a claim pursuant to Rule 12(b)(6).


Respectfully submitted,


Robert K. Hur

United States Attorney

By:      / s /                    .

Rebecca A. Koch
Assistant United States Attorney
Bar number: 802108
6406 Ivy Lane, Suite 800
Greenbelt, MD 20770
Telephone: (301) 344-4233
Facsimile: (410) 962-2310
rebecca.koch@usdoj.gov
*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I certify that on May 11, 2020, a copy of the foregoing Memorandum in Support of

Defendant's Motion to Dismiss was served on counsel of record by the Court's CM/ECF system.


/s/
_____
Rebecca A. Koch
Assistant United States Attorney