## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TERRI G. OCAMPO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civ. No: 19-CV-02875-CCB |
| | * | |
| MEGAN J. BRENNAN, Postmaster General, | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS,

Plaintiff, by and through her undersigned counsel, files this Plaintiff's Memorandum In Opposition To Defendant's Motion To Dismiss (Dkt. No. 21-1). Dismissal is improper in this case because Plaintiff's Complaint and Jury Demand set forth claims on which relief can be granted, and state plausible claims "for relief that 'permit[s] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, ___ U.S.___, 132 S. Ct. 1327, 182 L. Ed. 2d 296 (2012) (citation omitted).

## I.      INTRODUCTION

Plaintiff is Terri G. Ocampo and defendant is Megan J. Brennan, the Postmaster General ("Defendant"). On September 30, 2019 Plaintiff filed a Complaint and Jury Demand in this case against Defendant alleging disability discrimination and constructive discharges in violation of Section 504 of the **Rehabilitation Act of 1973**, as amended 29 U.S.C. § 794. et seq. ("Rehabilitation Act"), and Title 20 of Maryland's State Government Article ("Title 20"). On May 11, 2020 Defendant filed a motion to dismiss Plaintiff's complaint claiming that the Complaint fail to state a claim on which relief may be granted.

1

## II.   STATEMENT OF FACTS

In August 2017 Defendant hired Mrs. Ocampo as a City Carrier Assistant. ("CCA"). Comp. ¶ 9. The "functional purpose of the CCA is to collect and deliver mail by foot or vehicle in various weather conditions." Dkt. No. 21-2. During Mrs. Ocampo's employment, her direct supervisors were Troy Griffin and Phillip Brown, customer services supervisors, and Tashira Jefferies, Delivery supervisor. Comp. ¶ 9. Plaintiff supervisors knew that Plaintiff was diagnosed with Type I diabetes. Comp. ¶ 13. (Mr. Baldwin Affidavit Extract, hereinafter referred to as Exhibit A)[1]

On or about August 27, 2018, Mrs. Ocampo began feeling sick while delivering mail on a walking route in very hot weather, wherein heat advisory was issued by authorities. Comp. ¶ 10. Mrs. Ocampo believed that she was feeling ill due to the heat exposure on her as a diabetic. *Id.* Mrs. Ocampo contacted Mr. Baldwin and reported her illness caused by the heat. Mr. Baldwin told Plaintiff "to find a shade tree and keep it moving." *Id* at 11. Although Mrs. Ocampo took a few short breaks, Plaintiff found it necessary to return to the office to cool down in AC before completing her assignment. *Id.*

On August 28, 2018 Mrs. Ocampo reported for work, with the weather forecast for August 28, 2018 and the remainder of that week very hot with high humidity, nictitating heat advisory issued by authorities. *Id* at 12. Because Mrs. Ocampo felt sick working in the heat on August 27, 2018, Mrs. Ocampo asked Mr. Baldwin if Plaintiff could collect or deliver packages or do part of other routes where Plaintiff would not be out walking in the heat all day. *Id.* Mr. Baldwin

---

[1] The Court may, under Rule 12(b)(6), and without converting the Motion to Dismiss into a Motion for Summary Judgment, consider exhibits insofar as they are "integral to and explicitly relied on in" the Complaint and to the extent that their authenticity is not challenged by the plaintiff. *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (internal citation removed)

responded saying: "You are telling me you are not fit for duty; you are a CCA and you have to have street time." *Id*. Mr. Baldwin denied Mrs. Ocampo's request, directed Plaintiff to clock in for work and begin working, and assigned Plaintiff to work a walking route in the extreme heat. *Id.*

On August 29, 2018, Mrs. Ocampo took a sick day from work and visited her doctor, due to the feeling of illness Plaintiff was experiencing working in the heat. *Id* at 13. During the visit Mrs. Ocampo's doctor provided a medical note stating in part that Plaintiff: "is currently under my medical care for diabetes. Please make sure patient is able to take more frequent breaks during days with high heat and be offered work in air-conditioned environment, as extreme weather can have negative health impact." *Id.* Mrs. Ocampo presented this note to Mr. Baldwin upon reporting to work on August 30, 2018. *Id* at 14. In response, on August 30, 2018, Plaintiff was assigned to work collections and delivering mail in two high-rise building with air condition.  *Id*.

On August 31, 2018, Plaintiff reported for work and was assigned to a walking route in the extreme hot temperature. *Id* at 15. When Mrs. Ocampo asked Mr. Baldwin why she was not given accommodation, Mr. Baldwin responded, that: "you are not fit for duty, if you can't do a walking route". *Id*. Mrs. Ocampo asserted that she was fit for duty, and could perform all her duties, except that she was requesting accommodation because of hot temperature and high heat index.  *Id*. Although, Mrs. Ocampo felt unsafe and unwell working in high hot temperature, on August 31, 2018, Mrs. Ocampo performed the walking route assignment as directed by Mr. Baldwin, albeit taking breaks and a much longer time to complete the walking route assignment, for which Ms. Jefferies chastised Plaintiff. *Id* at 16.

Between September 1, 2018 and September 4, 2018, Mrs. Ocampo called out from work because of fear of getting sick from working in extreme heat, and pending a response from her collective bargaining unit who Mrs. Ocampo had contacted to register a grievance against Mr.

3

Baldwin for denial of her request for accommodation. *Id* at 17. On or about September 4, 2018 Mrs. Ocampo's union representative contacted Plaintiff and told her to call Mr. Baldwin. Mrs. Ocampo called Mr. Baldwin, and Mr. Baldwin directed her to report to work on September 5, 2018. *Id* at 17.

On September 5, 2018 Mrs. Ocampo reported for work and was assigned to a walking route in extremely hot temperature. Later, Plaintiff was called to the office, where Mr. Baldwin, Mr. Troy Griffin, Ms. Jefferies and Plaintiff's union representative were present. During the meeting Mr. Griffin remarked that if Defendant knew that Mrs. Ocampo was sick with restrictions, Plaintiff would have never been hired because "the post office does not hire sick people". Ms. Jefferies claimed that Mrs. Ocampo had resigned since August 31, 2018, when Plaintiff did not report to work and should not have returned to work on September 5, 2018. (*Id* at 18). In the meeting, Plaintiff supervisors directed and pressured Plaintiff to resign. (Mr. Griffin Affidavit Extract, hereinafter referred to as Exhibit B)[2]. Although Mrs. Ocampo wrote and signed the resignation as she was told, Mrs. Ocampo expressed that she felt that she was being forced to resign and would do so for the medical circumstance that was not being accommodated. Comp. ¶ 18.

## III.   STANDARD OF REVIEW

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations

---

[2] The Court may, under Rule 12(b)(6), and without converting the Motion to Dismiss into a Motion for Summary Judgment, consider exhibits insofar as they are "integral to and explicitly relied on in" the Complaint and to the extent that their authenticity is not challenged by the plaintiff. *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (internal citation removed)

omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).

When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." Id. (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

The Court may, under Rule 12(b)(6), and without converting the Motion to Dismiss into a Motion for Summary Judgment, consider exhibits insofar as they are "integral to and explicitly relied on in" the Complaint and to the extent that their authenticity is not challenged by the plaintiff. *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (internal citation removed); *see also Tellabs, Inc. v. Makor Issues & Rights, LTD*, 551 U.S. 308, 322, 127

S. Ct. 2499, 168 L. Ed. 2d 179 (2007) (court may consider "documents incorporated into the complaint by reference"). Further, to prevent a party from potentially misleading the court, documents referenced in the Complaint may be considered in their entirety on a Motion to Dismiss. *Higgins v. Md. Dep't of Agric.*, Civil Action No. L-11-0081, 2012 U.S. Dist. LEXIS 25303, at \*10-12 (D. Md. 2012)

In the employment discrimination context, a plaintiff need not establish a *prima facie* case in order to survive a motion to dismiss. *McDonnell Douglas Corp v. Green,* 411 U.S. 792, 802 (1973); *See also Sweierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002) (concluding that "the prima facie case…is an evidentiary standard, not a pleading requirement."). The standard to be applied when evaluating a motion to dismiss for failure to state a claim is very liberal in favor of the party opposing the motion. *Westlake v. Lucs*, 537.F.2d 857, 858 (6th Cir. 1976). Even if the plaintiff's chances of success are remote or unlikely, a motion to dismiss should be denied. *Scheuer v. Rhodes*, 416 U.S. 232, 236 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)."

## ARGUMENT

### IV.   PLAINTIFF SUFFICIENTLY STATED A CLAIM FOR DISABILITY DISCRIMINATION AGAINST DEFENDANT

The Rehabilitation Act provides "three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations." *A Helping Hand, LLC v. Balt. Cnty., Md.*, 515 F.3d 356, 362 (4th Cir. 2008); *Harrison-Khatana v. Wash. Metro. Area Transit Auth.*, Civil Action No. DKC 11-3715, 2015 U.S. Dist. LEXIS 7657, at \*37-38 (D. Md. 2015).

In this case, Mrs. Ocampo has alleged the first and third grounds, intentional discrimination, and failure to make a reasonable accommodation.

**A. Plaintiff has Sufficiently Stated a Claim for Intentional or Disparate Treatment Disability Discrimination**

Disability discrimination claims under the Rehabilitation Act are evaluated under the *McDonnell Douglas*, or indirect, "pretext" framework (*McDonnell Douglas Corp. v. Green* 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). See *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006). This framework creates the burden-shifting scheme, in which the plaintiff has the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. To establish a prima facie case of disability discrimination under the Rehabilitation Act, a plaintiff must show that: (1) she is disabled; (2) she was otherwise qualified for the position; and (3) she suffered an adverse employment action solely on the basis of the disability. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005).

**B. Plaintiff Pled Facts Sufficient to Show she is Disabled**

The ADA Amendments **Act** ("ADAAA") defines a disability as "(1) 'a physical or mental impairment that substantially limits one or more major life activities' (the 'actual-disability' prong); (2) 'a record of such an impairment' (the 'record-of' prong); or (3) 'being regarded as having such an impairment' (the 'regarded-as' prong)." *Summers Miller v. Md. Dep't of Nat. Res*., No. 18-2253, 2020 U.S. App. LEXIS 18605, at \*14 (4th Cir. June 12, 2020). An individual alleges he has an actual disability when he alleges (1) a physical or mental impairment that (2) substantially limits (3) one or more major life activities. *See* 42 U.S.C. § 12102(1). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A).

**C. The Complaint Plead Fact Sufficient to Show that Plaintiff Had An Actual Disability.**

Ms. Ocampo alleges facts that she was diagnosed with diabetes. Comp. ¶ 10, 12-14. Furthermore, the complaint alleges that Ms. Ocampo presented defendant with communication from her clinical physician's assistance confirming that Plaintiff was "currently under medical care for diabetes. *Id*. at 14. Regulation promulgated by the Equal Employment Opportunity Commission (EEOC) defines the term 'physical or mental impairment' to cover '[a]ny physiological disorder, or condition ... affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, [or] digestive....' 29 C.F.R. § 1630.2(h)(1) (2006) (amended 2011)." Carter v. Pathfinder Energy Servs., Inc., 662 F.3d 1134, 1142 (10th Cir. 2011).

Clearly diabetes meets this criterion. A person with type 1 diabetes, "despite [their] best efforts… [can suffer] short-term complications…, such as hypoglycemia [(low blood sugar)], [which can] require immediate care." Mayo Clinic Staff, *Type 1 Diabetes: Diagnosis and Treatment*, Mayo Clinic (Aug. 7, 2020), https://www.mayoclinic.org/diseases-conditions/type-1-diabetes/diagnosis-treatment/drc-20353017. "Hypoglycemia symptoms are different from person to person… [and] could include: Shakiness; Nervousness or anxiety; Sweating, chills, or clamminess; Irritability or impatience; Dizziness and difficulty concentrating; Hunger or nausea; Blurred vision; Weakness or fatigue; Anger, stubbornness, or sadness. Centers for Disease Control and Prevention (CDC), *Type 1 Diabetes* (Mar. 11, 2020), https://www.cdc.gov/diabetes/basics/type1.html. High heat and humidity can exacerbate the risks posed by type 1 diabetes. *See generally* CDC, *Managing Diabetes in the Heat* (Jul 12, 2018), https://www.cdc.gov/Features/diabetesheattravel/index.html.

Defendant claims that: "Plaintiff does not allege the type of diabetes with which she was

diagnosed, when she was diagnosed, whether she takes medicine to treat her diabetes, whether her diabetes requires behavioral adaptation such as a strict diet, or her overall health as a result of her diabetes" and that Mrs. Ocampo's doctor's note provides no details beyond the "negative health" of "extreme weather" the complaint is deficient. Dkt. 21-1 p. 7. The Defendant relies on *Quarles v. Md. Dep't of Human Res.* No. MJG-13-3553, 2014 WL 6941336, (D. Md. Dec. 5, 2014) as a basis for their argument. The court in that case however did not rule in-line with the current standards for determining whether the Plaintiff's diabetes was a considered a disability. *Id.* [T]he *Quarles* decision was based on law that was no longer good precedent at the time *Quarles* was decided and the decision itself never acknowledges the sea-change brought about by the 2008 ADA Amendments nor tries to apply the amendments. *Quarles* does not provide support for defendants' position that [the Plaintiff's] diabetes is not a disabling condition. *Maday v. Dooley*, No. 4:17-CV-04168-KES, 2019 WL 4935705, at *42 (D.S.D. Mar. 8, 2019), *report and recommendation adopted as modified*, No. 4:17-CV-04168-KES, 2019 WL 4747058 (D.S.D. Sept. 30, 2019). Congress specifically passed the 2008 amendments, in part, to overrule previous Supreme Court decisions which narrowed the definition of "disability." Joan Farrell, JD (Senior Legal Editor), *ADA Compliance Guide, December 2016 Supplement,* Appendix II Federal Regulations, 2003 WL 25318126.

Persons suffering from the underlying effect of type 1 diabetes satisfactorily meet the requirements of a protected person under the ADA and the EEOC guidelines. Ms. Ocampo has been diagnosed with type 1 diabetes; she provided documentation to her superiors from her physician that she, "is currently under my medical care for [type 1] diabetes…" on August 30, 2018 Comp. ¶ 14. Because Ms. Ocampo Suffers from illness due to type 1 diabetes, she falls under the protection of the ADA and the EEOC.

As in *Testerman v. Procter & Gamble Mfr. Co.* (D. Md. Sept. 29, 2015) the Plaintiff suffered from diabetes and was feeling ill effects from extreme heat, which the court did not determine was not considered a disability, only agreeing that the Defendant was permitted to request further clarifying information regarding the specifics of the Plaintiff's limitation from a doctor, including what constituted "extreme heat". CV CCB-13-3048, 2015 WL 5719657, at *14.

      1.  **The Complaint plead facts sufficient to show that Plaintiff's physical impairment substantially limits one or more major life activities'**

Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Plaintiff alleged that the diabetic condition affected her ability in performing manual task.   Comp. ¶ 20 The complaint also set forth facts showing that Plaintiff condition impacted Plaintiff's ability to work in extreme hot weather. This is further supported by medical care provider.

Additionally, here as in the *Testerman* case, Plaintiff also suffered substantial limitations in her major life activity of work. Here, Mrs. Ocampo was at risk of suffering negative health effects do the "extreme weather" (i.e. extreme heat), which prevents her from performing manual tasks, including work (a major life activity). Comp. ¶ 10-15. Similar to *Testerman*, Ms. Ocampo's doctor determined that Mrs. Ocampo's diabetes's makes her susceptible to injury due to the heat, thereby substantially limiting her ability to work in certain limited environments, specifically outdoors during the hottest part of the day, during days of extreme heat. This limitation is enough to satisfy the initial hurdle to begin the conversation about her requiring accommodations, however, here Defendant failed to make any effort to seek further information, which could have provided them with the necessary documentation, as was required in *Testerman*. Furthermore, Mrs. Ocampo passes the requirements identified in *Eubank* as, unlike in that case, Mrs. Ocampo's health

condition is directly associated with the underlying factors the accommodations at issue were seeking to mitigate.

**D.   The Complaint Plead Fact Sufficient to Show that Defendant Regarded Plaintiff as having a Disability.**

Pursuant to the ADA, an individual is regarded as having a disability "if the individual establishes that he or she has been subjected to an action prohibited under this chapter 12 because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). *Miller v. Md. Dep't of Nat. Res.*, No. 18-2253, 2020 U.S. App. LEXIS 18605, at *18 (4th Cir. June 12, 2020)

The Complaint alleges facts sufficient to show that Plaintiff was regarded as a person having a physical impairment by Defendant. When Plaintiff reported to Mr. Baldwin, who knew that Plaintiff was diabetic, that she was feeling sick while working in heat advisory temperature, he immediately interpreted it as Plaintiff been "not fit for duty." Comp. ¶ 12, 15. During the September 5, 2019. Mr. Mr. Griffin remarked that if Defendant had known that Plaintiff was sick with restrictions, Plaintiff would have never been hired because "the post office does not hire sick people". At the meeting Plaintiff expressed that Plaintiff felt she was being forced to resign and would do so for the medical circumstance that was not being accommodated. Comp. ¶ 18.

**E.   The Complaint Avers Facts Showing Plaintiff was otherwise qualified for the position**

A plaintiff is "qualified" if he or she is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8). "Essential functions" are "the fundamental job duties of the employment position." 29 C.F.R. § 1630.2(n)(1). They do not include "the marginal functions of the position." *Id.*; *Higgins v. Md. Dep't of Agric.*, Civil Action No. L-11-0081, 2012 U.S. Dist.

LEXIS 25303, at *17-18 (D. Md. Feb. 28, 2012).

Ms. Ocampo, other than taking time for illness (Comp. ¶ 11) performed the essential functions of her job without reasonable accommodation. Defendant exhibit describes the functional purpose of the CCA to "delivers and collects mail on foot or by vehicle under varying road and weather conditions in a prescribed area". Dkt. 21-2. Even after she began to suffer from working in extreme heat with diabetes, she performed the essential functions of her job. Comp. ¶9. On August 27, 2018 she completed her route after taking the necessary care to protect her health. On August 30, 2018, after one day off to see her physician, she was assigned an indoor collections and delivery route which she completed without incident. *Id* at 14. The following day, after being assigned an out-door route for the entire day, she requested and was denied request to *supplement* the route with indoor work, which was included in her list of possible duties. *Id.* 15. Regardless of the lack of accommodation, she completed her route that day. *Id*. The following day, August 31, she faced the same refusal to accommodate, but still completed her assigned out-door route, only to be berated for being too-slow. *Id.* at 16. When Baldwin insisted that Plaintiff was, "not fit for duty, if you can't do a walking route," (*Id* at 15) Mrs. Ocampo asserted that she could perform all her duties, except that she was requesting accommodation because of hot temperature and high heat index. *Id.* Throughout the some of the hottest times of the year and suffering from the effects of type 1 diabetes Ms. Ocampo performed the essential functions of her job duties, and only sought accommodation within the boundaries of the CCA job description.

### F. The Complaint Avers Facts Sufficient To Show Plaintiff suffered an adverse employment action solely on the basis of Plaintiff's disability.

Ms. Ocampo was discharged from her employment. On September 5, 2018 Ms. Ocampo reported to work and began working per the direction of her supervisor. Comp. ¶ 17.  At some time during that day, after being assigned an outdoor walking route, she was called into a meeting.

During this meeting Mrs. Ocampo's supervisors branded her as a "sick person" and falsely described Mrs. Ocampo's actions on August 31, 2018, as her having resigned (*Id* at ¶ 17-19), when in actuality during this meeting Plaintiff supervisor directed Plaintiff to resign. (*Id*. at 19). Ex. B

### G. Plaintiff Sufficiently Stated A Claim For Failure To Accommodate Under The ADA.

To succeed on her failure to accommodate claim, Plaintiff must demonstrate that: (1) she was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of the disability; (3) she could perform the essential functions of her position with a reasonable accommodation; and (4) the employer refused to provide such accommodations. *Wilson v. Dollar Gen. Corp*., 717 F.3d 337, 345 (4th Cir. 2013) (citation omitted). "Implicit in the fourth element is the [] requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation." *Haneke v. Mid-Atlantic Capital Management*, 131 F.App'x 399, 400 (4th Cir. 2005). *Harrison-Khatana v. Wash. Metro. Area Transit Auth*., Civil Action No. DKC 11-3715, 2015 U.S. Dist. LEXIS 7657, at *13 (D. Md. Jan. 22, 2015).

### 1. Plaintiff is a Person with a Disability within the Meaning of the Rehabilitation Act

Plaintiff incorporates herein the points and arguments set forth in Section IV establishing that Plaintiff's complaint set forth factual allegations showing that Plaintiff is a person with a disability under the statute.

### 2. Defendant Knew of Plaintiff's Disability

Establishing of this element is satisfied by the averments in the complaint that Plaintiff submitted a "doctor note" to her supervisor, which disclosed her medical condition and the accommodation being request. "The Seventh Circuit has held that it is the responsibility of the

employee to inform her employer of the disability at issue. *Heatherly v. Portillo's Hot Dogs, Inc.*, 958 F. Supp. 2d 913, 921 (N.D. Ill. 2013) citing *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir.1996). In that case the employee sought modification to outside work, but failed to provide written notice of this, which the court deemed required to meet the element.

Here, Mrs. Ocampo informed her employer, i.e. the defendant knew of her disability, and of what reasonable accommodations were required. Here, Ms. Ocampo provide her supervisor with a doctor's note, disclosing that she was being treated for diabetes and specifically stating that reasonable accommodation, being "frequent breaks during days with high heat," should be provided. Comp. ¶ 14.

### 3. With Reasonable Accommodation She Could Perform The Essential Functions Of The Position

Per the Standard Job Description of a City Carrier Assistant (CAA), the "functional purpose" states: "Delivers and collects mail on foot or by vehicle under varying road and weather condition in a prescribed area; maintains professional and effective public relations with customers and others, requiring a general familiarity with postal laws, regulation, products, and procedures commonly used, and geography of the area." Dkt. No. 21-2. As this is listed as the first paragraph, and the defendant eluded to it as such (Dkt No. 21-1, at 9)**,** it can be inferred that these are the "essential job functions" required of the CCA. The Defendant argues, that the CAA job description requires delivering and collecting mail along a prescribed route. Dkt No. 21-1, 9. In support of that argument the Defense cites *Sidaris v. Runyon* (M.D. Ala. 1997) which held that a letter carrier who could not make "deliveries during the summer months when the temperatures average eighty degrees or higher" could not perform the essential functions of a letter carrier. 967 F. Supp. 1260, 1267 967 F. Supp. 1260, 1267 (M.D. Ala 1997).

Ms. Ocampo has not made any claim that she is unable to perform any of the essential

function of a CCA. Only in the most extreme circumstance did Mrs. Ocampo ask for a modification in her assigned duties for a limited time, and the modification requested was still within the "essential functions" prescribed in the job description. Ms. Ocampo requested assignment to a non-walking route (Comp. ¶ 12) or to allow for more time to complete the assigned route to accommodate extra breaks during the hotter part of the days (*Id.* at 11-15), as per what was recommended by her doctor. Unlike in *Sidaris* Mrs. Ocampo *can* perform her duties during the summer months, only in the most extreme heat is the Plaintiff requesting accommodations. Furthermore, in *Sidaris,* Plaintiff did not suffer from diabetes.

### 4. Defendant Refused to Make the Accommodation

Reasonable accommodation requires the parties to work together to find a solution. "The duty to engage in an interactive process to identify a reasonable accommodation is generally triggered when an employee communicates to his employer his disability and his desire for an accommodation for that disability. *Wilson v. Dollar Gen. Corp.,* 717 F.3d 337, 346–47 (4th Cir. 2013) *citing EEOC v. C.R. England, Inc.,* 644 F.3d 1028, 1049 (10th Cir.2011). To determine the appropriate reasonable accommodation, it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations. 29 C.F.R. § 1630.2(o)(3). Therefore, it is crucial that the employer and employee make a good faith effort to reach an agreement about what reasonable accommodation look like.

Here, there is no evidence to show that the Defendant made an effort after August 30th to provide any accommodation, much less work for Ms. Ocampo, or how best to provide some accommodation during weather conditions where heat advisories are issued. Specifically, when

Ms. Ocampo requested the same route on August 31st, her supervisor stated that she was considered unfit if she could not work the route assigned. Comp. ¶ 15. Moreover, this type of animus increased to hostility during the meeting on September 5, 2018 when Ms. Ocampo was subjected to being labeled as "sick people" and told to resign. *Id* at 18.

An employer must offer reasonable accommodations to an employee who has a disability, unless the employer can show that the accommodation "would impose an undue hardship" on the employer. 42 U.S.C. § 12112(b)(5)(A); *Sara Lee Corp*., 237 F.3d at 353. "The ADA does not require an employer to provide the specific accommodation requested, or even to provide the best accommodation, so long as the accommodation… is reasonable." *Scott v. Montgomery County Gov't*, 164 F.Supp.2d 502, 508-09 (D.Md. 2001).   Here Defendant refused to offer any accommodation except to direct Plaintiff to resign.

## V.   PLAINTIFF'S COMPLAINT SETS FORTH A PLAUSIBLE CLAIM FOR CONSTRUCTIVE DISCHARGE

To establish a claim of constructive discharge a plaintiff must prove (1) deliberateness of the employer's action, and (2) intolerability of working conditions. *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985), *cert. denied*, 475 U.S. 1082, 89 L. Ed. 2d 718, 106 S. Ct. 1461 (1986)). Although the plaintiff must prove the employer's specific intent to force her to leave, intent can be inferred from circumstantial evidence. *See Pollard v. High's of Balt., Inc.*, 281 F.3d 462, 472 (4th Cir. 2002). *Young v. Shore Health Sys*., 305 F. Supp. 2d 551, 559 n.* (D. Md. 2003)

### A.  Defendant Intended to Terminate Plaintiff's Employment on September 5, 2018

To establish that an employer acted deliberately, a plaintiff must "prove 'that the actions complained of were intended by the employer as an effort to force the employee to quit.'" *Whitten v. Fred's, Inc.*, 601 F.3d 231, 248 (4th Cir. 2010), abrogated by *Vance v. Ball State Univ.*, 570 U.S. 421, 133 S. Ct. 2434, 186 L. Ed. 2d 565 (2013) *quoting Martin v. Cavalier*

16

*Hotel Corp.*, 48 F.3d 1343, 1353–54 (4th Cir.1995). A plaintiff must provide "proof of the employer's specific intent to force an employee to leave." *Bristow*, 770 F.2d at 1255. "Deliberateness can be demonstrated by actual evidence of intent by the employer to drive the employee from the job, or circumstantial evidence of such intent, including a series of actions that single out a plaintiff for differential treatment," *Johnson v. Shalala*, 991 F.2d 126, 131 (4th Cir. 1993), or "a failure to act in the face of known intolerable conditions . . . ." *Bristow*, 770 F.2d at 1255. Failure to accommodate does not create a constructive discharge, per se, although "a complete failure to accommodate, in the face of repeated requests, might suffice as evidence to show the deliberateness necessary for constructive discharge." *Johnson*, 991 F.2d at 132. *Carter v. Centura Coll.*, Civil Action No. 2:10-00907-CWH, 2012 U.S. Dist. LEXIS 25566, at *32-33 (D.S.C. 2012)

In this case, Defendant sought to force Mrs. Ocampo into choosing between working under dangerous health conditions or remaining employed.  On September 5, 2020 after Mrs. Ocampo went off to perform the essential functions of her job without the requested accommodations, she was called to meeting with all her supervisors.  Mr. Griffin told Plaintiff she should resign.  Ms. Jeffries told Mrs. Ocampo that she had resigned on August 31, 2018 and should not have returned to work. This was a surprise meeting that was planned ahead of time by Mrs. Ocampo's supervisor.  When Mrs. Ocampo asked why she is resigning, Mr. Griffin told her "to avoid further corrective action".  Clearly defendant intended to take adverse action against Mrs. Ocampo in relation to her request for accommodation and her inability to work walking routes in extreme heat. Mr. Griffin's admission by itself is evidence of direct intent to fire Mrs. Ocampo.

### B.  The Complaint show Circumstantial Evidence of Defendant's Intention to Force Plaintiff for her job.

Immediately after Mrs. Ocampo reported feeling ill doing the walking route in extreme heat, Mr. Baldwin responded that Mrs. Ocampo was not fit for duty.  Comp. ¶ 12. After Mrs. Ocampo returned to work with a doctor's request for accommodation on August 30, 2019, Mr. Baldwin accommodated and assigned Plaintiff a vehicle route, in a building with AC, etc. *Id,* at 13. However, on August 31, 2018, Mr. Baldwin refused to grant the said accommodation and instead assigned Mrs. Ocampo a walking route in the extreme heat. *Id.* at 14. Mr. Baldwin told Plaintiff is she could not do the walking route, she was "not fit for duty." *Id.* Plaintiff performed without the accommodation. *Id.* at 16. Mrs. Ocampo later contacted her union representative and reported a grievance regarding the denial of her requested accommodation, before returning to work. *Id.* at 17. On September 5, 2018, returned to work after following directives form her union representative to call Mr. Baldwin about returning to work, and Mr. Baldwin directing Plaintiff to return to duties at work without accommodation. *Id.* 17-18.

Clearly Mrs. Ocampo had not resigned and had not intended to resign on September 5, 2018. However, the surprised meeting on September 5, 2018 with supervisors, Mr. Griffin, Mr. Baldwin and Ms. Jefferies, in which they sought to address Mrs. Ocampo request for accommodations and her absences overwhelmed Mrs. Ocampo., per the supervisor's intentions, and produced a resignation. At the meeting, the supervisor made clear their intention to provide the requested accommodation and their animus against Plaintiff due to her disability by repeatedly telling Plaintiff that Defendant "don't employ sick people".

### C.  The Complaint Alleges Sufficient Fact Showing that Plaintiff's Working Conditions were Intolerable.

Whether a plaintiff's working conditions were intolerable is assessed by the objective standard of whether a reasonable person in the plaintiff's position would have felt compelled

to resign." *Taylor v. Virginia Union University,* 193 F.3d 219, 237 (4th Cir. 1999), *cert. denied,* 528 U.S. 1189, 146 L. Ed. 2d 101, 120 S. Ct. 1243 (2000). The Fourth Circuit has held that "dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Id.* (internal quotation marks omitted) (quoting *Carter v. Ball,* 33 F.3d 450, 459 (4th Cir. 1994)). *Bryan v. Lucent Techs., Inc.,* 307 F. Supp. 2d 726, 742-43 (D. Md. 2004). The frequency of the conditions at issue is also important. "The more continuous the conduct, the more likely it will establish the required intolerability. On the other hand, when the conduct is isolated or infrequent, it is less likely to establish the requisite intolerability." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019)

Here is not the case of dissatisfaction with work assignment or unpleasant working conditions. Here Defendant required Mrs. Ocampo to expose herself to potentially fatal health risk by working in extreme heat delivering mail.  Mrs. Ocampo's working Conditions were Intolerable, and would have continued to be, had her employment not ended.

## D.  CONCLUSION

WHEREFORE, because Plaintiff's Complaint and Jury Demand properly set forth claims on which relief can be granted and state plausible claims "for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" Plaintiff asks the Court to deny Defendant's Motion to Dismiss.

Respectfully Submitted,

*/s/ George A. Rose*

_____
George A. Rose, Esq., (Bar No. 26086)
Rose Law Firm, LLC
200 E. Lexington Street, Suite 1305

Baltimore, MD.  21202
Telephone #: 410-727-7555
Facsimile #: 443-320-0962
Email: grose@roselawfirm.net
Attorney for *Plaintiff Terri Ocampo*

### **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 15th day of June 2020, a copy of the foregoing Plaintiff

Memorandum in Opposition to Defendant's Motion to Dismiss, and Proposed Order, was

electronically filed and served upon, and/or mailed to: Rebecca A. Koch, Assistant United States

Attorney, (rebecca.koch@usdoj.gov) at the United States Department of Justice, 6406 Ivy Lane,

Suite 800, Greenbelt, MD 20770, counsel for Defendant.


*/s/ George A. Rose*
 _____
George A. Rose, Esq.